272 So.2d 417 (1973)
SOUTHERN ACOUSTICS, INC., Plaintiff-Appellant,
v.
Abe RITMAN, d/b/a Abe's Sea and Sirloin Restaurant, Defendant-Appellee.
No. 11983.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1973.
*418 Feist, Schober, Gray & Howell, by James Fleet Howell, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, by James E. Clark, Shreveport, for appellee.
Before AYRES, PRICE and HALL, JJ.
HALL, Judge.
Plaintiff, Southern Acoustics, Inc., brought suit against defendant, Abe Ritman, d/b/a Abe's Sea and Sirloin Restaurant, seeking to recover the sum of $1,125 allegedly due for labor and materials involved in the installation of a tile ceiling in defendant's restaurant. Defendant answered denying liability on the basis that the type ceiling installed was not the acoustical-type ceiling specified by him in his negotiations with plaintiff. Defendant reconvened seeking to recover the sum of *419 $2,195.95 for the cost of removing the ceiling installed by plaintiff and installing a new ceiling, loss of income, and overtime charges incurred by defendant due to plaintiff's delay in completing the original work as specified.
After trial of the case the district court rendered judgment rejecting plaintiff's demands, awarding defendant and plaintiff-in-reconvention the sum of $814.86 (less a credit of $421.25, said credit being allowed by way of an award for quantum meruit) leaving a net judgment of $393.61, and allocating court costs in the proportion of 65.92 per cent to plaintiff and 34.08 per cent to defendant.
From this judgment plaintiff appealed and, in its brief, asks that the judgment be reversed and plaintiff be awarded the sum of $421.25 under quantum meruit and that the reconventional demands of defendant be rejected. Defendant and plaintiff-in-reconvention answered the appeal praying that the judgment be affirmed insofar as it rejects the demands of plaintiff and that the judgment be amended by increasing the award to plaintiff-in-reconvention from $393.61 to $2,195.95.
In the early part of July, 1970, Ritman, who was planning some remodeling work at his restaurant, contacted officers of the plaintiff corporation and asked them to come by to discuss the installation of a new ceiling in his main dining room. The plaintiff corporation had in previous years installed acoustical tile ceilings in the kitchen, bar and small dining area of defendant's restaurant. Plaintiff's officers, Harold Strausman and Abie Werth, were long-time friends of Ritman and the previous work was done without formal written contracts.
Strausman and Werth called on Ritman who explained he wanted to remove the existing suspended acoustical tile ceiling in the main dining room and replace it with an inexpensive, glued-on tile ceiling. In describing what he wanted defendant pointed to the ceiling of the small dining and bar areas and said he wanted a ceiling "like that". The ceiling in these areas was inexpensive, glued-on acoustical tile squares with perforations. The work was to be done during the week of August 3-10, at which time the restaurant would be closed while Ritman was on vacation. During the conversation Strausman and Werth gained the impression that Ritman's main objective was to replace the discolored, dirty, existing suspended ceiling with a nicer looking, easily cleanable and maintainable tile ceiling. The cost of the job was never mentioned and there was no discussion whatsoever about noise or the acoustical quality of the ceiling to be installed.
Strausman and Werth decided to install 12×12 tile squares manufactured by the Celotex Corporation of a designer type. This tile was selected because of its economical price, its very nice appearance, its easily washable characteristic, and its tongue and groove construction which allowed it to level itself when glued onto the sheetrock ceiling. Being designer type tile, the product was not represented as having any special acoustical qualities and had never been tested for such qualities. The evidence shows that Celotex Corporation also manufactured an acoustical tile of similar material but with perforations which had been tested and was represented to have a noise reduction coefficient of 45-55%. This acoustical tile was only slightly more expensive than the designer tile and was of the same type previously installed in the small dining area and bar. The existing suspended ceiling in the main dining area had a noise reduction coefficient of approximately 90%. Although the designer tile actually installed by plaintiff had never been tested, it was Strausman's opinion and the opinion of an employee of Celotex Corporation, based on their experience with the acoustical qualities of various materials, that the designer tile would *420 have a noise reduction coefficient of approximately 20%.
The ceiling was installed by plaintiff during the week the restaurant was closed and the other remodeling work done. When the restaurant reopened the following week, it was observed that the noise level had increased considerably and Ritman contacted Strausman and Werth to see what could be done about the noise. After considerable discussion plaintiff offered to take out the newly installed ceiling and put in a glued-on acoustical tile ceiling at no additional cost to Ritman. Ritman insisted that the new ceiling be glued onto the designer tile ceiling, his reason being that the time involved in removing the designer tile ceiling would substantially interfere with his business operations. Plaintiff insisted on removing the designer tile ceiling for the reason that it had a sale for that tile and also because adding the acoustical tile to the designer tile might put too much weight on the original glue which would increase the possibility of the ceiling coming loose. The manufacturer advised plaintiff that it would not stand behind the product if installed in this manner.
At this point, negotiations and communications between plaintiff and defendant completely broke down. Defendant refused to pay plaintiff's charges of $775 for the work done and this lawsuit ensued. Defendant went ahead and contracted with others for the installation of an acoustical tile ceiling which was installed over the designer tile ceiling previously installed by plaintiff. The installation of the acoustical tile ceiling, which was a more expensive product of a greater thickness than either the designer or acoustical tile manufactured by Celotex, cost defendant $1,071.15. The evidence is that after the installation of the acoustical tile ceiling which had a noise reduction coefficient of 60-70%, over the designer tile ceiling the noise level was reduced considerably to about what it was before the suspended tile ceiling was removed.
Our impression is that the parties involved were each in complete good faith and that their testimony during the trial was honest and direct. We are presented with the difficult question of determining who owes who what, if anything, arising out of the facts as outlined above.
Plaintiff held itself out as a specialist in acoustical ceilings, emphasizing acoustics in its advertising and in its motto "our business is quiet". The ceilings previously installed by plaintiff in the bar and in the small dining area of defendant's restaurant were all of acoustical types. The ceilings pointed to by defendant in describing what he wanted were of the perforated, acoustical type. Although defendant did not by specific words designate the particular type tile he wanted, and no mention was made of noise or acoustical qualities, defendant was relying on plaintiff's expertise in the selection of the particular tile. It seems only reasonable that plaintiff should have given substantial weight to the acoustical qualities of the tile in making its selection for installation in this informal restaurant which did not have carpet, drapes, tablecloths or other sound-reducing furnishings. This is particularly true since plaintiff had done similar work for defendant in the past using tile with definite acoustical qualities and defendant could reasonably assume plaintiff would do the same on this job. We are of the opinion the designer tile installed did not conform with what defendant could reasonably have expected, in view of his description of what he wanted and in view of defendant's reliance on plaintiff's expertise in selecting a proper product, all circumstances considered.
It follows that at this point defendant was not obligated to pay for what amounted to a defective ceiling.
Plaintiff's offer to remove the designer tile ceiling and install an acoustical tile glued-on ceiling at no additional cost *421 to defendant seems fair and reasonable at first blush. However, a principal motivating cause of the original informal contract was that the ceiling be installed during the week the restaurant was to be closed. The evidence clearly shows that the time involved in removing the designer tile ceiling during normal working hours would interfere with defendant's business which was open daily. Thus, the proposal made by plaintiff could not be accomplished without loss to defendant. Perhaps a satisfactory solution could have been worked out but at this point communications broke down between the parties and no solution was reached.
Plaintiff contends that it is entitled to recover its actual cost of labor and materials based on quantum meruit or unjust enrichment. Plaintiff points out that defendant has the benefit of the labor and materals supplied by it and that the designer tile which is still in place benefits defendant because it increases the acoustical qualities of his ceiling by approximately 10% noise reduction coefficient. We find the increased acoustical qualities due to the presence of the designer tile to be insignificant and not translative into any value to defendant. Defendant has not, therefore, been unjustly enriched. Plaintiff is not entitled to recover in that the labor and materials furnished did not comply with the unspoken but necessarily implied conditions of the original contract and were of no value to defendant.
Defendant as plaintiff-in-reconvention is not entitled to recover for his cost of installation of the acoustical tile ceiling over the designer tile ceiling. Although his cost was more than the price charged to him by plaintiff for the original ceiling, the evidence shows he used a more expensive type of acoustical tile than was originally contemplated by the parties under any interpretation of their original arrangement. It is not shown that the installation of the designer tile ceiling by plaintiff caused defendant any additional cost in connection with his subsequent installation of the acoustical tile ceiling.
Neither is plaintiff-in-reconvention entitled to recover for any loss of income arising out of this situation. Plaintiff-in-reconvention offered evidence to show that during the period the designer tile ceiling was in place, his business failed to increase as greatly as it did in comparable periods of other years. However, the evidence falls far short of showing that he actually lost any business or income by reason of the additional noise during this period.
Plaintiff-in-reconvention's claim for overtime charges incurred during the week when plaintiff made the installation is also unsupported by the evidence. The evidence does not support plaintiff-in-reconvention's contention that plaintiff unreasonably delayed the other contractors working on the remodeling work so as to cause unnecessary overtime charges.
We find that neither party has established its claims against the other. Accordingly, and for the reasons assigned, the judgment of the district court is reversed and it is ordered, adjudged and decreed that the demands of plaintiff, Southern Acoustics, Inc. and the demands of plaintiff-in-reconvention, Abe Ritman, both be rejected. Costs of this proceeding are assessed one-half (½) to plaintiff and one-half (½) to defendant.
Reversed and rendered.