305 So.2d 557 (1974)
U-TEST-M OF LOUISIANA, INC., Plaintiff-Appellee,
v.
E. F. MARTIN, d/b/a Martin's Specialty Coatings, Defendant-Appellant.
No. 12457.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1974.
*558 Jack D. Barnett, Shreveport, for defendant-appellant.
Skeels, Baker & Coleman by J. William Fleming, Shreveport, for plaintiff-appellee.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
Plaintiff brought this suit to recover damages allegedly resulting from defendant's failure to perform a contract to repair plaintiff's roof.
Defendant perfects this suspensive appeal from the trial court's judgment awarding plaintiff damages in the sum of $5,004.00, plus interest and court costs.
The facts of the case are not in serious dispute. U-Test-M of Louisiana owns a building located at 2737 Mansfield Road in Shreveport. John D. Hand, Jr., President of plaintiff corporation, testified the roof of these premises began to leak slightly during the latter part of 1968. After consulting with defendant, E. F. Martin, a specialist in roof coatings, an agreement was made on January 2, 1969, for Martin to "coat complete roof with Gacote NA-62 neoprene coating as per manufacturer's specifications," for the sum of $1,713.00. The contract proposal provides warranty of five years on all labor and materials. The work was performed by defendant in early 1969 and the contract price paid by plaintiff.
Later that year, Martin recommended the application of a product called White Solar-Gard to the roof, which is a coating designed to reflect heat. This was authorized by plaintiff and applied by Martin at a cost of $644.00.
Hand testifies that leaks began to occur during the very first rain following the application of the coating. It is undisputed that numerous requests were made by Hand to either Edward Martin, or his brother, Charles Martin, to repair the roof, and that on several occasions employees of the Martin Company went to Hand's place of business in an attempt to correct the problem.
The evidence shows that by September of 1972 the leaks in the building had become so acute that following each rain considerable time was spent by plaintiff's employees in mopping and emptying buckets placed throughout the building to protect against rain water. It is apparent from the testimony damages was done to the walls, ceiling, floors, furniture and other contents of the building, and that the Martin Company's efforts to correct the leaks were totally unsuccessful. Finally, after giving notice to Martin, plaintiff contracted with Nichols Roofing & Mill Works, Inc., to have the old roof removed and an entire *559 new roof installed. Total cost of this contract was $2,656.00, of which $200.00 was for the installation of four twelve inch turbine vents. This work was completed and paid for by December, 1972. Hand has experienced no leakage problems since that period.
Before the trial, defendant filed an exception of prescription which was referred to the merits and eventually overruled by the trial court. The exception is not argued on appeal.
The thrust of the defense urged by defendant is that he contracted solely to apply a coating of the neoprene substance of a designated brand name to plaintiff's roof in accordance with the manufacturer's specifications and that this was done. He further contends the express warranty is limited to defects in the product applied or the method of application. He contends he did not contract to achieve the results which plaintiff now claims he expected from the use of the product, nor did he warrant such results. Thus expressed in simple terms the issue is whether or not the defendant contracted to stop the leaks in plaintiff's roof or did he merely contract to sell and apply a designated product with no representation that it would achieve the result desired by plaintiff.
We find the evidence to show the object of the undertaking contracted by defendant was to stop existing leaks and to prevent any recurrence for a limited time.
The record reflects that pursuant to Hand's request, defendant, along with the factory representative of Hooker Chemical Corporation, a manufacturer of roof coatings, went to the plaintiff's premises to inspect the roof and make recommendations and cost estimates. There were at least two meetings between the parties and at least two possible products were discussed which are designed to stop leaks. Hand accepted the most expensive of the two proposals submitted to him because of the greater warranty of this product. We believe the negotiations between the parties constituted a representation by defendant that the use of this product would rejuvenate the existing built-up asphalt roof and stop it from leaking.
If the cause of the continued leaking was the unrepairable state of the roof as now contended by defendant, this should have been noticed by him at his first inspection and declared to plaintiff. There is testimony in the record by the brother of defendant who worked on the job, that the suitability of the asphalt on the old roof can be determined by a very simple test which was not performed by defendant in this case.
We believe Hand was entirely reasonable in relying on the expertise of defendant in recommending this product would satisfy his needs. See Southern Accoustics, Inc. v. Ritman, 272 So.2d 417 (La. App. 2nd Cir. 1973).
The defendant has therefore breached the warranty provisions of his contractual agreement with plaintiff and is liable for the damage resulting therefrom. The damages found by the trial court to the contents of the building appear to be proper and to be in accord with the law and evidence.
Under Article 1934 of the La.Civil Code only such damages are recoverable "as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract." Damage to contents from a failure to correct leaks is in accord with the object of the contract involved herein. However, this would not be true insofar as the damages allowed by the trial court for the cost of installation of a complete new roof. It is clear the coating process was only designed to extend the life of the old roof for a period of approximately five years. A new roof has an estimated life of 20 years. This clearly would be beyond the reasonable contemplation of the parties.
We find the plaintiff is entitled to recover the cost paid to defendant for the original *560 contract of $1,713.00, and the subsequent application of the White Solar-Gard in the amount of $644.00. Neither of these applications were effective or of any benefit to plaintiff.
For the foregoing reasons the judgment appealed from is amended to award plaintiff judgment against defendant in the total sum of $4,905.00, itemized as follows: Original contract price, $1,713.00; application of Solar-Gard, $644.00; damages to contents of the building, $2,548.00, and as amended is affirmed. Costs of this appeal are to be paid by appellant.