474 So.2d 1383 (1985)
AUSTIN'S OF MONROE, INC. dba Austin's Restaurant, Plaintiff-Appellant,
v.
Bill BROWN, dba Bastrop-Monroe Cash Register Sales and Service, et al., Defendants-Appellees.
No. 17153-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*1385 Blackwell, Chambliss, Hobbs & Henry by Douglas C. Caldwell, for plaintiff-appellant.
Farrar and Jefferson by Stephen A. Jefferson, for defendant-appellee, Brown, dba Bastrop-Monroe Cash Reg. Sales.
Shotwell, Brown & Sperry by George Wear, Jr., for defendant-appellee, Commodore Business Machines, Inc.
Boles & Mounger by Charles H. Ryan, for defendants-appellees, Pruden & Whatley.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
In this action arising out of a contract to furnish a restaurant with computer hardware, software, and programming to control and monitor cash drawers, sales, inventory, and accounting, the restaurant appeals a judgment which decreed a reduction in the purchase price against the seller, and which rejected the restaurant's demands for damages in solido against the seller and the manufacturer of the computer software.
The trial court treated the agreement as a sale subject either to redhibition or quanti minoris and not as a "making of a work." Compare CC Arts. 2439 and 2756.
In this appeal the restaurant contends it should have judgment in solido against both the seller and the manufacturer for damages totaling $350,000 for such things as loss of profits, inconvenience, and overtime expense, and for either specific performance or rescission of the contract.
We agree with the trial court that the agreement should be treated as a sale and find that the trial court did not abuse its discretion to decree reduction in price instead of rescission (CC Art. 2543) or specific performance (CC Art. 1986). We also affirm the award of attorney fees to the restaurant and deny appellees' demands for damages for frivolous appeal, made in answer to the appeal. We amend the judgment, however, from $6,980 to $4,980 in favor of the seller to allow the buyer credit for $2,000 paid as a down payment.

FACTS
After incorporation, the restaurant planned to open for business in September 1980. Its principal officer and sole shareholder, Simmons, inquired to Brown, who sold and serviced cash registers, about cash registers for the restaurant in March 1980.
Brown proposed instead to furnish a computerized cash register system that would perform, as well, other functions useful to the restaurant. The restaurant agreed and eventually Brown prepared a letter agreement and an invoice in March 1980 containing provisions to this effect:

ITEMS SOLD:
2 Commodore 2002 "Pet" Computers $ 3,390.
3 Commodore printers 3,285.
1 disk drive 1,395.
Programming (software) and training 2,830.
 _______
Subtotal $10,900.
10 percent discount (1,090.)
 ________
TOTAL $ 9,810.

The system was to perform
1. All cash register functions to process different forms of payment (cash, check, credit card);
2. Menu list with prices;
3. Current inventory level with "buy signals" to indicate reorder points:
4. Payroll management, including timekeeping and payroll deductions;
5. Mailing list for customer promotions.
and to report on command
1. Daily cash shortage or overage;
2. Sales for each item or waitress, by table, with "tip control" for each;
3. Daily, weekly, monthly, and yearly sales, with separate reporting of state and local taxes;
4. Percentage of total sales attributable to each item.
The agreement provided for payments of "20% down, 20% when installed, 50% of balance in 30 days, remainder in 60 days... 90 day full refund on equipment if not fully satisfied." Simmons paid $2,000 down and Brown's programmers, Whatley and Pruden, installed the system and began *1386 training Simmons' wife who was to supervise the system's operation. The system did not perform as expected by the restaurant or by Brown. The cash register function was substantially operational and the restaurant opened as scheduled on September 15, 1980.
Plans to perfect the programming and operation of the system after the opening did not succeed. Operator error sometimes caused the system to lose vital data. Power fluctuations or interruptions caused the system to fail and created delays in processing customer orders and checks. The cash drawers and computer terminal which were in the upstairs barroom continuously malfunctioned and were soon replaced by a conventional cash register.
One of the computer printers was removed and was replaced with a printer of another manufacturer that would print on conventional size paper used for customer checks. The discarded printer would not accommodate the narrower paper desired for customer checks.
Brown's programmers, Whatley and Pruden, continued their attempts to make the system perform as contemplated but without noticeable success.
Before Brown contracted with the restaurant, his employee, Whatley, succeeded in programming Commodore computers to perform cash register, inventory, accounting and reporting functions for several retail stores in the Monroe area in 1979. Brown was then purchasing Commodore hardware from a wholesaler in Texas. Commodore negotiated to acquire Brown's application of its hardware and Brown's programming for retail stores. In a written agreement in October 1980 Brown sold these programs to Commodore for a consulting fee and a small percentage or royalty on sales in which Brown, Whatley, and Pruden would share for a limited time. Commodore hired Whatley and Pruden to work on this system in Commodore's Dallas offices.
Brown hired another programmer, Rainbolt, to work on the system for the restaurant about the time that Whatley and Pruden left Brown to work for Commodore in Dallas some six weeks after the restaurant opened. Rainbolt's effort, and those of other programmers from Monroe area universities, did not succeed in making the restaurant system perform as expected. Mrs. Simmons manually maintained inventory and payroll records for the restaurant. Brown's system generated some sales reports, but only by shift, and did not produce or report data for inventory and cost control.
The restaurant sued Brown, Whatley, Pruden, and Commodore in February 1981, about five months after opening. Brown reconvened to demand the purchase price. Through the trial in April 1984, the restaurant continued to use the cash register function of the system. Some of the contemplated reporting functions of the system were never perfected or used.

THE TRIAL COURT'S REASONS AND JUDGMENT
The trial court dismissed all claims against Commodore, specifically finding no redhibitory vice in the Commodore hardware and that Commodore was not otherwise liable under any dealership agreement with Brown, or under the October 1980 agreement with Brown to promote and market a computerized cash register system for retailers. The court found that specific performance by Brown of the original agreement was "impossible" and that damages stemming from the system's failure to perform as represented by Brown were either not proved or were offset by the restaurant's use of the system.
The trial court treated the agreement as a sale subject to a reduction in price. Brown, however, was found to have sold "defective software" [a redhibitory vice] and the entire system price ($9,810) was reduced to $6,980, by the amount of the "software and training" charge in the original agreement ($2,830). The restaurant had paid only the $2,000 down payment which is not reflected in the judgment. Judgment was rendered in favor of Brown on his reconventional demand for the reduced *1387 purchase price ($6,980) and the restaurant was awarded $1,500 attorney fees.
The trial court dismissed the restaurant's demands against Pruden and Whatley, finding that they were not individually liable. The restaurant does not appeal this portion of the judgment. All appellees answered the restaurant's appeal seeking damages for frivolous appeal. CCP Art. 2164.
The trial court was impressed that Brown and his employees were "always willing and ready" to attempt to resolve problems with the system and on "short notice." The record supports the trial court's conclusion that the Commodore computer hardware was not defective and that the vices in the system arose out of the failure of Brown to provide adequate programming, software, and training.
The trial court also emphasized that Brown often offered either to refund the $2,000 down payment or to replace the system with a more conventional cash register system. The trial court declined to order rescission because the restaurant "persisted" or seemed content to use the system through the date of the trial and did not accept Brown's offer to refund or replace the system.
The court also noted that the restaurant, on the one hand, admitted the system is probably better than any system used in restaurants which have been observed by the corporate owner, while on the other hand, Brown admitted that the system could not be perfected to perform all of the functions contemplated in 1980.
The court declined to award damages for the additional reason that the restaurant enjoyed considerable benefits from the system for almost four years and full depreciation for tax purposes while paying only the $2,000 down payment. We note that after the upstairs barroom hardware was removed and some programming changes were made, the basic cash register feature of the system has apparently functioned as contemplated since early 1981.
Under this record we cannot determine what price a reasonably minded buyer and seller would have agreed on solely for the cash register function of the system had they known that the other functions of the system were defective. There is simply no evidence in the record of what cash registers for the restaurant would have cost in 1980 when the agreement was made or in 1984 when the case was tried. See and compare Ball v. Ford Motor Co., 407 So.2d 777 (La.App. 1st Cir. 1981). The burden of proving this is the buyer's, and not the seller's, burden. Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691 (1958).

CONTRACT TO DO OR TO GIVE?
Brown's agreement with the restaurant smacks of a contract to do, the making of a work under CC Art. 2756, as well as a contract to give, a sale under CC Art. 2439. Brown's obligation to design, program, install, and train the restaurant employees to operate, the system is more than trifling installation of a thing sold. These obligations to do, however, and while somewhat substantial, do not negate the characterization of the contract as a sale, which imposes the obligation to give or to deliver.
While the intent of the parties to a contract to enforce different obligations may be given effect, the contract as a whole may be characterized by its predominate or fundamental obligation. See Hunt v. Suares, 9 La. 434 (1836); FMC Corp. v. Continental Grain Co., 355 So.2d 953 (La. App. 4th Cir.1977); Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La.App. 2d Cir.1983); KSLA-TV, Inc. v. Radio Corp. of America, 501 F.Supp. 891 (W.D.La. 1980), remanded on other grounds, 693 F.2d 544 (5th Cir.1982), and affirmed, 732 F.2d 441 (5th Cir.1984).
When different obligations are intimately connected ... one of them must be recognized as fundamental and if it is one to do, for instance, the whole contract will be treated as giving rise to obligations of that kind.
Litvinoff, 7 Louisiana Civil Law Treatise Obligations 157 at 288 (1975).
The restaurant system Brown sold admittedly required extensive programming *1388 unique to the restaurant but both Brown and the restaurant contemplated the system would be "on line" or delivered and performing within a short time by Brown's application of then available resources and skill. The software and training charge represents Brown's estimate of his cost and profit to place the system on line and amounts only to about 1/5, of the total cost of the system. The restaurant was not obligated to pay Brown for additional services to place the system on line.
We hold then that this contract had as its predominant or fundamental object the obligation to deliver or to give the restaurant an operational computer system and that the contract was correctly categorized as one of sale subject to redhibition. Compare Triangle Underwriters, Inc. v. Honeywell, Inc., 457 F.Supp. 765 (E.D.N.Y. 1978), remanded on other grounds, 604 F.2d 737 (2d Cir.1979), and affirmed, 651 F.2d 132 (2d Cir.1981) where a similar contract, for the purposes of prescription, was held to be a sale and not a contract to provide services.

COMMODORE'S LIABILITY
The restaurant argues that Commodore, as the hardware manufacturer, should know that its computers, when sold to a buyer, are like blank sheets of paper on which the seller will write programs customized to the buyer's needs, and that Commodore should be liable in contract as well as in tort for not warning or providing standards to the seller-programmer of its hardware to protect against the result produced by faulty or improper programming.
The manufacturer of a non-defective, even though substantial, component of a thing assembled and created by another should not be liable to the buyer of that thing for redhibitory vices in the assembled and created thing. In this sense, the assembler or creator of the thing from component parts effectively becomes the manufacturer of the thing. Compare Amin v. Head, 419 So.2d 529 (La.App. 2d Cir.1982), writ denied. See Peterson v. Coleman Oldsmobile, Inc., 393 So.2d 372 (La.App. 1st Cir.1980), where GMC, the manufacturer of the cab and chassis, on which another built a customized motor home, was found not liable in redhibition to the buyer of the motor home because the defects were not in the GMC component but in the other components added by the customizer. The seller of the motor home and the customizer-builder were held liable in redhibition to the buyer. CC Arts. 2520, 2545.
Here, Brown was the "customizer"manufacturer of the system who put the software on the non-defective Commodore hardware. The defects were in components other than the Commodore component and Commodore should not be liable in tort or in contract to the restaurant under the circumstances of this case.
Commodore's relationship with Brown before or after their October 1980 agreement does not render Commodore liable to the restaurant. Commodore was simply the manufacturer of hardware that Brown sold the restaurant in March 1980. Commodore did not contractually, at any time, render itself liable to the restaurant for any defect in the system Brown sold the restaurant. We find no error in the judgment dismissing the restaurant's demands against Commodore.

BROWN'S LIABILITY: SPECIFIC PERFORMANCE
The restaurant argues that specific performance is possible or practical today because Whatley and Pruden testified that by changing the restaurant's software program from Basic language to a more up-to-date assembly language and by reprogramming they could make the system perform all functions Brown promised in the 1980 agreement with the restaurant. CC Art. 1986.
Whatley, Pruden, and Rainbolt are no longer employees of either Brown or Commodore and it was not shown at trial that Brown had a programmer familiar with the restaurant's system. It was also not shown what the cost would be to change the language and reprogram. Under the circumstances, the trial court did not abuse its discretion by denying specific *1389 performance. Where the inconvenience of performance outweighs the damage to the obligee, the trial court acts within its discretion by denying specific performance which otherwise may be feasible. See Litvinoff, 7 Louisiana Civil Law Treatise Obligations 171 (1975).

RESCISSION OR REDUCTION IN PRICE
As the seller and effective manufacturer of the system, Brown is liable in redhibition to the restaurant buyer. CC Art. 2545. The critical question is whether the defects in the system are of such a degree that the trial court may decree, in its discretion, a reduction in price instead of rescission. CC Arts. 2541-2544. Ark-La-Tex Builders & Realty, Inc. v. Hoge, 344 So.2d 90 (La.App. 2d Cir.1977).
The trial court acknowledged that the hardware in the system may be arguably worthless without proper programming and operator training but concluded that the restaurant has been content to abide with and use the cash register function provided by the system for several years, since early 1981.
The degree and effect of a defect in the thing sold is a factual determination best made by the trial court under the circumstances of each case. Boudreaux v. Riley Buick, Inc., 415 So.2d 970 (La.App. 2d Cir.1982). We inquire specifically whether the restaurant's use of the system in its defective state is so inconvenient to the restaurant that it reaches the degree where the system is altogether unsuited to its purpose. CC Arts. 2520, 2541, 2542. Boudreaux, supra. There we faced the same question regarding a new automobile sold for $13,000 with a defective engine. We said:
Viewed in its totality and considering the circumstances that this automobile had a defective engine when sold, but was yet driven for 11,000 miles for more than a year, and that the engine could have been repaired to a new condition for approximately $2,000, the trial court judgment awarding a reduction of $3,662.84 and attorney fees of $1,500 is not an abuse of discretion and achieves substantial justice between the litigants.
415 So.2d at 972, 973.
In this case, we find that the trial court's reduction in price and award of attorney fees is not an abuse of discretion and achieves substantial justice between the litigants. Compare Alexander v. Burroughs Corp., 350 So.2d 988 (La.App. 2d Cir.1977), amended on other grounds and affirmed, 359 So.2d 607 (La.1978), where the entire system including the hardware constantly required repair over a one-year period following the sale of the system.
Here the record supports the conclusion that the restaurant derived tax benefits from the total price of the system; that the cash register function of the system performed properly from early 1981 through the 1984 trial date and that other functions of the system could be reprogrammed with other computer language and be made to perform as contemplated in March 1980. We cannot say that the reduction in price of $2,830 is adequate or inadequate. The burden of proving a greater reduction, however, was the restaurant's burden. That reduction, however, in the judgment is against the unpaid portion of the purchase price and the restaurant should certainly receive credit for the $2,000 down payment.

DECREE
We therefore amend to reduce the judgment in favor of Brown from $6,980 to $4,980, and, as amended, affirm the judgment in all respects.

OTHER ISSUES
Neither litigant complains about the amount of the attorney fee awarded the restaurant.
The restaurant introduced, over the objection of all defendants, evidence regarding loss of profit, overtime for the wife of the corporate owner, and replacement cost for one of the printers, items that defendants argue should not be allowed because they were not specially pleaded within the demand for general *1390 damages. CCP Art. 861. We recognize authority permitting the courts to "construe pleadings to do substantial justice" and to "grant relief to which a party is clearly entitled even if not specially demanded." CCP Arts. 862, 865, 5051. Even should we agree the evidence was admissible, we find the record supports the trial court's determination to reject the restaurant's claim for damages. Mrs. Simmons was a salaried and not an hourly employee of the restaurant and was not paid overtime. A corporation may recover for inconvenience, interruption of service, and loss of good will. The trial court's finding that the restaurant did not prove that the damages were suffered or the amount are supported by the record. We agree with the trial court that "the simple comparison of volume sales over a period or from one period as compared to another does not prove by the preponderance necessary that any lost sales were due entirely to some defective programming of the computer or breakdown of the computer." See Southern Acoustics, Inc. v. Ritman, 272 So.2d 417 (La.App. 2d Cir.1973). As a fact finder, the trial court has wide discretion to determine whether damage has been incurred and, if so, to determine the award. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). We agree with and adopt the trial court's reasons for disallowing damages.
The restaurant's appeal is not frivolous merely because we have not agreed with its contentions. See Gunderson v. Libbey Glass, 412 So.2d 656 (La.App. 2d Cir.1982). The restaurant's appeal raises debatable legal questions regarding the nature of a contract to provide a sophisticated and unique computer system and we therefore deny appellees' demand for damages for frivolous appeal.
As amended, the judgment is AFFIRMED. Cost of the appeal are assessed equally to appellee Brown and to the restaurant.