888 So.2d 309 (2004)
Floyd BEARLY, Plaintiff-Appellant,
v.
BRUNSWICK MERCURY MARINE DIVISION and Genmar Holdings, Inc., Defendants-Appellees.
No. 39,069-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*310 Shuey, Smith, Reynolds, Rios & Hiller, L.L.C. by Richard E. Hiller, Shreveport, for Appellant.
Kean, Miller, Hawthorne, D'Armond, McCown & Jarman, L.L.P. by Charles L. Patin, Jr., Maxwell Gantt Kees, Sr., Baton Rouge, for Appellees, Genmar Holdings and Wood Manufacturing Co. d/b/a Ranger Boats.
Mayer, Smith & Roberts, L.L.C. by John C. Turnage, Shreveport, for Appellees, Brunswick Mercury Marine.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
Plaintiff seeks return of the purchase price of a boat and motor from the wholesaler of the boat and motor. Plaintiff alleged that the defendant manufacturer outfitted its product with another manufacturer's motor which was incompatible for use with the boat. Plaintiff alleged that the defendant knew of the motor's incompatibility at the time of its assembly with the boat, but that it marketed the boat wholesale to plaintiff's marine dealer despite the defective condition. Defendant challenged plaintiff's ability to prove its advance knowledge of the defect with a motion for summary judgment which was granted by the trial court. Finding that defendant's knowledge of the defect is immaterial to plaintiff's claim under either our products liability law or in redhibition, we reverse.

Facts
Plaintiff, Floyd Bearly, purchased a Ranger boat and Mercury motor from Reeves Marine ("Reeves"), a boat retailer. Bearly alleged that he immediately began experiencing problems with the motor which necessitated returning to Reeves for repair work on several occasions. He filed suit against Brunswick, Mercury Marine *311 Division ("Brunswick"), the manufacturer of the motor, and Wood Manufacturing Company, d/b/a Ranger Boats ("Ranger"), the manufacturer of the boat. Bearly sought return of the purchase price, unspecified damages, and attorney fees.
The pertinent allegations of Bearly's petition are as follows:

9.
In the time spent trying to continually repair the broken and cracked reeds in the Mercury Boat, Petitioner has discovered that whenever the Mercury Motor is idling around, the reeds in the Motor get blown out or cracked. Petitioner has even spoken with representatives of Brunswick and members of its racing team, and they have indicated to him that this type of Mercury Motor on this type of Ranger Boat will not work properly.
* * *
20.
Petitioner was informed by representatives of Brunswick Corporation that the representatives of Wood were well aware of the fact that this particular Mercury motor was not a suitable design for this type of Ranger Boat, but that Wood decided to go ahead and market this Mercury Motor and Ranger Boat together anyway.
21.
Petitioner alleges that Wood knew of the design problem with the Mercury Motor for this particular Ranger Boat prior to the sale of the Mercury Motor and Ranger Boat to Petitioner, but Wood failed to take any actions to solve it.
Ranger filed an answer and incidental demand, generally denying the allegations made by Bearly and countering that Brunswick indemnify Ranger for any damages arising from Bearly's suit.
After discovery, Ranger filed a motion for summary judgment based on a lack of evidence supporting the allegation that Ranger knew the Mercury motor and the Ranger boat were incompatible but marketed them together anyway. Ranger offered the supporting affidavit of Bill Beatty, a technical account manager for Brunswick when Bearly's problems arose. Beatty averred that he never told Bearly the Mercury motor was not suitable for the Ranger boat.
Ranger also attached Brunswick's answers to interrogatories denying that its representatives or employees ever told Bearly the Mercury motor would not work properly in tandem with the Ranger boat, or that Ranger was aware of any such incompatibility. Brunswick also denied the existence of any internal documents so indicating.
Bearly's opposition included his own affidavit and answers to interrogatories describing conversations with three different Brunswick representatives who allegedly informed him of such incompatibility. The affidavit also stated that Beatty told Bearly he had informed Ranger of the problem. The affidavit of Kevin Parker, a mechanic at Reeves, describing several telephone conversations with Brunswick's employee Randy Hankwitz was also submitted. Hankwitz informed Parker that the motor was a performance engine, not suitable for extended idling, and thus unsuitable for the bass boat.
After the hearing, the trial court granted Ranger's motion for summary judgment and dismissed Bearly's claims against it. The trial court determined that since the affidavits of Bearly and Parker were based upon the hearsay statements of others regarding Ranger's knowledge of the alleged defect, Bearly had not shown that he could *312 meet his burden of proof at trial. Bearly appeals the judgment on the grounds that his opposition affidavits established genuine issues of material fact based upon the personal knowledge of the affiants.

Discussion
Our review of the parties' briefs to this court and the trial court reveals the glaring omission of any discussion of the cause of action existing between Bearly and Ranger. Instead, the parties debated in a vacuum whether there was undisputed evidence that Brunswick had notified Ranger that the Mercury motor was incompatible for installation on the boat Ranger marketed wholesale to Reeves.[1] Since we find that Ranger, as the alleged assembler of the two products, may be responsible under the Louisiana Products Liability Act (La. R.S. 9:2800.51, et seq.) (the "LPLA") or in redhibition (La. C.C. arts. 2520, et seq.) without actual knowledge of its defectively assembled product, the issue of its knowledge contested in this summary judgment proceeding is not dispositive of the case.
Initially, we will review Bearly's claim under the LPLA. The LPLA defines a manufacturer to include the following:
(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
La. R.S. 9:2800(1)(c). In stating that Ranger outfitted its boat with the Mercury motor as a component, Bearly's petition asserts that Ranger is a manufacturer under LPLA. For purposes of assessing Bearly's cause of action based on the pleadings, we accept that Ranger could be an LPLA manufacturer because of its actions in assembling the end product. See, Rey v. Cuccia, 298 So.2d 840 (La.1974); Austin's of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2d Cir.1985).
Next, although Bearly is claiming no personal injury from the defective product, the LPLA provides that damage under the Act "includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled `Redhibition,' does not allow recovery for such damage or economic loss." La. R.S. 9:2800.53(5). Although this provision and its relation to a claim in redhibition has been questioned by commentators concerning its clarity, all seem to agree that the consumer will have a right to recover against the manufacturer for purely economic loss, whether under the LPLA or in redhibition. Thomas C. Galligan, Jr., The Louisiana Products Liability Act: Making Sense of It All, 49 La. L.Rev. 629 (1989); William Crawford, The Louisiana Products Liability Act, 36 La. B.J. 172 (1988); John Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565 (1989); Revision Comments, La. C.C. art. 2545. We agree with this analysis, yet do not decide at this time whether Bearly's claim is under the LPLA, or in redhibition, or both. We will set forth the basis for the claim under both theories of recovery to show that the actual knowledge of Ranger regarding the defect is irrelevant to the viability of Bearly's claim.
*313 In viewing the claim under the LPLA, "the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S. 9:2800.54(A). The product is unreasonably dangerous if the product is unreasonably dangerous in construction or composition. La. R.S. 9:2800.54(B)(1). This type of unreasonably dangerous condition is addressed in La. R.S. 9:2800.55, which provides:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
Although the use of the phrase "unreasonably dangerous" in the LPLA implies danger to the consumer or user resulting in personal injury, the Act as a whole, by its allowance for damage to the product itself and other purely economic loss, suggests that such product which does damage to itself because of its composition is "unreasonably dangerous" under the Act, subjecting the manufacturer to liability. Thus, we find that Ranger's product can be considered under the alleged facts to be in violation of La. R.S. 9:2800.55. Nevertheless, for purposes of the summary judgment ruling before us, La. R.S. 9:2800.55's definition of an unreasonably dangerous product does not require that the manufacturer have knowledge that the construction or composition of the product is defective. The liability theory underlying that section is therefore a type of strict liability, and the parties' argument over Ranger's knowledge of the defect was misplaced.
Before leaving the LPLA and considering redhibition, it must be noted that the Act provides that it "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Ranger is a manufacturer, but it is not Bearly's seller, who under Civil Code article 2520 would warrant the buyer against redhibitory defects. Nevertheless, the Code's provisions on redhibition, which, in 1993 after the enactment of the LPLA, were revised and re-enacted, contain remedies against certain manufacturers. These redhibition remedies and their jurisprudential interpretation as to claims against manufacturers before the enactment of LPLA may be argued to conflict with the "exclusive theories of liability" provision of the LPLA. Yet, as indicated above, we need not decide that question at this stage of the proceedings. From the following review of the law of redhibition, with the assumption that the law can apply, Ranger's actual knowledge of the defect is not material to a claim in redhibition.
The two redhibition articles of the Civil Code which directly address manufacturers are Articles 2531 and 2545. Regarding the seller without knowledge of the defect, Article 2531 provides:
A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect.
Article 2545 further provides that a seller, who is also the manufacturer of the product, is deemed to know that the thing he *314 sells has a redhibitory defect and he is liable in redhibition.
Regardless of these limited articles, our highest court, in dealing with a clear redhibitory claim, pronounced the following in the landmark decision in Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377, 381 (La.1972):
Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty. We see no reason why the rule should not apply to the pecuniary loss resulting from the purchase of a new automobile that proves unfit for use because of latent defects.
[Citations omitted.] In Rey v. Cuccia, supra, the court confirmed that the Media conclusion was indeed a ruling regarding the scope of redhibition and that "the purchaser can recover the pecuniary loss resulting from the unusable thing sold from the manufacturer as well as the seller." Id. at 845.
The 1993 Revision Comments to Article 2545, again, written after the enactment of the LPLA, reflect that Media's and Rey's broad interpretation of the Code's redhibition principles still apply to a manufacturer who is not the immediate vendor of the plaintiff/vendee. Comment (i) states that "the assembler of things manufactured by another is a seller in bad faith." Comment (d) states that "the buyer may bring action against all sellers in the chain of sales back to the primary manufacturer to rescind a sale for breach of implied warranty." See also, La. C.C. art. 2548. The jurisprudence cited in support of the Revision Comments reflects that Ranger, as an alleged assembler/manufacturer without direct privity with Bearly, is nevertheless subject to claims in redhibition. Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803 (La.1974); Womack and Adcock v. 3M Business Products Sales, Inc., 316 So.2d 795 (La.App. 1st Cir.1975); see also, LeGros v. ARC Services, Inc., 03-918 (La.App. 3d Cir.2/25/04), 867 So.2d 63 and De Atley v. Victoria's Secret Catalogue, LLC, 04-0661 (La.App. 4th Cir.5/14/04), 876 So.2d 112.
From this authority, Bearly's petition reflects the allegation of a cause of action in redhibition. Accordingly, because of the manufacturer's presumed knowledge of the defect under the jurisprudential interpretation of Article 2545, Ranger's actual knowledge of the alleged defect is immaterial to Bearly's claim.

Conclusion
While we have determined that Bearly's claim states a cause of action, we leave open the question which the parties have never briefed concerning the application, vel non, of the LPLA, the law of sales and redhibition, or both bodies of law. Because of the parties' lack of articulation of the cause of action before the trial court, the court's ruling for summary judgment must be reversed. Costs of appeal are assessed to appellee.
REVERSED AND REMANDED.
NOTES
[1] A review of the motion for summary judgment and memorandum indicates that Ranger only addressed the issue of Bearly's inability to show that it had received notice of the motor's incompatibility with the boat. It did not sufficiently point out to the court, or give notice to the plaintiff, that the issue of the alleged incompatibility could not be proven by the plaintiff. Therefore, we view the summary judgment as only addressing the issue of Ranger's notice, which was indeed the basis of the trial court's ruling.