464 So.2d 777 (1985)
Sidney ROSENTHAL, Jr. and Carolyn Rosenthal
v.
CLEARVIEW DODGE SALES, INC., Chrysler Corporation.
No. 84-CA-237.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*778 Ronald Lee Monroe, New Orleans, for plaintiffs-appellants.
Edwin A. Stoutz, Jr., William F. Bologna, Elizabeth Alston, New Orleans, for defendants-appellees.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an action in redhibition brought by the plaintiffs, Sidney and Carolyn Rosenthal, Jr. to rescind the sale of a 1977 Dodge Monaco. The defendants in this action are Clearview Dodge Sales, Inc. (Clearview), the vendor of the vehicle, and Chrysler Corporation (Chrysler), the manufacturer. The plaintiffs are seeking recision of the sale, damages and attorney fees. Clearview filed a third party demand against Chrysler, as manufacturer of the automobile, seeking indemnity for any liability Clearview might have to plaintiffs. The trial court dismissed Clearview's third party demand against Chrysler and ordered Clearview to pay to the plaintiffs the principal sum of $500.00, together with legal interest and costs. The court reasoned that the "existing defect in this vehicle is attributable to the attempted repair done by Clearview, and is not attributable to the manufacturer, Chrysler; said defect having been caused by defective repair work attempted *779 by Clearview." From this judgment plaintiffs have appealed seeking recision of the sale, attorney's fees and damages.
The plaintiffs assign the following errors for our review:
The trial court committed manifest error when:
1. It excluded plaintiffs' Exhibits P-34 and P-35 from introduction in evidence and gave no weight to them in reaching its decision;
2. It ordered a reduction in price and ignored clear and convincing evidence of the presence of redhibitory defects prior to the sale requiring recision of the sale and return of the purchase price and damages;
3. It failed to award attorney's fees.
The plaintiffs purchased a 1977 Dodge Monaco from Clearview Dodge on November 7, 1977. The plaintiffs allege that on their first ride in the vehicle, they detected what they described as "grinding in the rear end, whining in the rear end, and the loud clunking in the rear end of the vehicle." The plaintiffs state that on November 8, 1977, the first time they fully inspected the car, they noticed numerous scratches, dents, paint chips, defects, malfunctions and missing items. Inclusive of these alleged problems were grinding in the right wheel on braking, the car pulled to the right when driving, a loud noise in the vicinity of the right rear wheel, whining in the exhaust system at medium speeds (40-50 mph), loud and excessive noises from the rear suspension system when traveling over rough surfaces, grinding of metal in the rear at low speeds (15-20 mph) and a cracked parcel shelf.
On November 10, 1977, arrangements were made at the dealership for repairs and remedy of the complaints. Plaintiffs were assured that all problems would be corrected. On November 23rd, the plaintiffs were advised that the car was repaired and ready to be picked up. They went to the dealership not on the 23rd but on the 25th of November and found the car in the bodyshop, not repaired and with the same defects complained of after test driving. On November 29, 1977, the plaintiffs notified the dealership in writing of their dissatisfaction with the car and asked for another car free of defects, or rescind the sale and refund the full purchase price and damages, or repair and remedy the defects to their satisfaction.
Numerous repair attempts at the dealership and Key Dodge, three inspections by the manufacturer's representatives and frustration followed until the filing of this lawsuit.
The plaintiffs complained prior to filing of this lawsuit and they testified at trial that their vehicle's use is so inconvenient and imperfect that they would not have purchased it had they known of these numerous defects before the sale.
According to Mr. Rosenthal, he returned the vehicle to Clearview for servicing on November 21, 1977, and after four days the vehicle was returned, allegedly with the same noises. By his estimate, he alleged that he returned the vehicle to Clearview five times and he received no satisfaction relative to the problems with his vehicle. Mr. Rosenthal contends that he then contacted Chrysler who directed him to another dealership for correction of the alleged noises in the rear of his vehicle. Chrysler further agreed to pay for any repairs to the vehicle. Mr. Rosenthal claims the repairs were made, but within a week the offending noises started again. At this point he decided not to have the vehicle repaired anymore.
In March, 1982, Chrysler's Customer Relations Manager, J.T. Meals, inspected the plaintiffs' vehicle which included a test ride on open roads and over speed bumps. Meals was unable to detect a discernable noise in the rear end, however, he heard some clunks and rattles in the rear of the vehicle. He was able to substantially eliminate these noises when he properly secured the jack and jack handle which had been left unsecured in the trunk of the vehicle. The plaintiffs' expert, Joseph Credilio, inspected the vehicle just prior to the trial in *780 November, 1982. Credilio found the vehicle to be in good condition and stated that the noise could be eliminated for approximately $500.00.
In addition to Credilio and Meals, two other experts, Richard Brandhurst, Service Manager of Clearview Dodge, and James McCann, former Chrysler District Manager, testified regarding their inspections of the vehicle. All four experts inspected the vehicle in much the same manner, including a visual canvass of the vehicle and a test drive. Each expert reached essentially the same conclusion: with the windows down and the radio off, a minimal whine-sounding noise could be detected in the rear of the vehicle. Elimination of the noise would require an adjustment or, possibly, replacement of the deferential at a cost of up to $500.00.
The vehicle was essentially in good condition and at the time of trial had approximately 6,000 miles on it.
During trial of this matter testimony and documentary evidence reflected that the three major complaints of noise were acted upon by the dealership by service and replacement. On December 13, 1977, with 793 miles on the car, the ring gear and pinion in the rear end were replaced. On February 23, 1978, with 1240 miles, a rear end backlash adjustment was made. Further, on March 28, 1978, with only 1560 miles on the car the carrier bearings were replaced. Three experts testified at trial as to the possible cause of the plaintiffs' major complaints and the remedy of those complaints. Richard Brandhurst stated, "Several reasons, 50 reasons why, you know, it could be so many". This was in answer to any other reason for the noise in the rear end other than the ring gear and pinion. Expert witness James McCann described the noise as follows. "The Whine in the rear axle from the pitch and the sound of the whine, I would have thought it to be a mismatched ring gear and pinion in the rear end". McCann in answer to what would be the source of the rear end noise answered, "Normally it would be as I mentioned, improper machining that would take place at the assembly factory or perhaps if the rear end had been worked on before, it could have been from an improper adjustment."
The expert called on behalf of Chrysler, J.T. Meals, described the source of the noise and its remedy: "Based upon which I have experienced in the car, and the mileage on the car, would indicate that the ring gear and pinion gear assembly would have to be replaced.
Lutie Wheat, was called as a plaintiffs' witness to describe the noises she heard when riding in the car. She described the noise as, "It was a most annoying noise. I would venture to say, well, I told them on that occasion I would be afraid to ride in the car."
Furthermore, she stated that it had been several years since she has last ridden in the car, and when asked how she would describe her feelings when hearing the noises, she stated, "I would have preferred to go in my own car from then on."
The three experts who testified at trial and who had inspected the vehicle stated there were no signs of owner abuse, neglect or misuse.
In order to maintain an action of redhibition, the plaintiffs must prove that Clearview sold the car to them, and that the vehicle contained a "redhibitory defect." A redhibitory defect entitling the buyer to rescind the sale is some non-apparent vice existing before the sale, in the thing sold, which renders it useless or its use so imperfect that the buyer would not have bought it if he had known of the defect. The buyer may prove the existence of a redhibitory defect before the sale by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. LSA-C.C. arts. 2520, 2521, 2530; Rey v. Cuccia, 298 So.2d 840 (La.1974).
In the present case, the trial court found that the defects were either minor or easily repairable. The trial court had sufficient evidence before it to justify these conclusions from both lay and expert testimony. *781 Our review of the record does not indicate that these conclusions are clearly wrong. Accordingly, we will not disturb the trial court's judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court clearly found that Chrysler was not answerable to the plaintiffs and that the only problems experienced by the plaintiffs were the responsibility of and caused by Clearview. The court's finding that $500.00 to remedy the defect and repair the vehicle was in effect a reduction in the purchase price which would adequately compensate the plaintiffs for their inconvenience.
LSA-C.C. art. 2543 authorizes the court to limit plaintiffs' recovery to a reduction in price if the evidence had warranted the lesser remedy. We find no error in this regard.
C.C. art. 2543 states:
"Art. 2543. The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action. But in a redhibitory suit, the judge may decree merely a reduction of the price."
Mr. Credilio's estimated cost of repair figure ($500.00) was used by the court as a basis for his damage award and is supported by the evidence.
James McCann, former District Manager for Chrysler, called as a witness by the plaintiffs, testified that the alleged noise complained of by the plaintiffs was easily remedied. He stated that at low mileage (less than 1500 miles), the problem could be remedied by an adjustment or, at most, a part replacement by a competent servicing dealership. The trial court's award of $500.00 was a reduction in the purchase price.
Plaintiffs argue that the trial court improperly excluded from evidence plaintiffs' Exhibits P-34 and P-35 (i.e. copies of warranty repair orders). The trial court refused to accept the documents into evidence because the custodian of business records for Clearview, Kirk Tracey, could not identify the documents as part of the business records of Clearview. Despite the court's refusal to allow introduction of these documents, plaintiffs were able to introduce the information contained in the repair order through the testimony of Mr. Tracey.
The trial court's exclusion of the unauthenticated proffered documents was at most, harmless error. Notwithstanding this conclusion, we have reviewed the testimony and documentary evidence and find no justification for reversal.
After hearing the testimony and reviewing the evidence, the trial court correctly concluded that this case did not merit a rescission of the sale. The reasons for the court's finding are amply supported in the record. Four experts testified that the vehicle contained no serious defects other than a slight noise and was in good condition. The court concluded that the noise problem in the vehicle was the responsibility of the selling dealer. The vehicle contained no serious defects and it was suited for its intended purpose. Accordingly, the court concluded the only damages awardable to the plaintiffs was a reduction in the purchase price necessary for repairs to the rear end of the vehicle.
For the plaintiffs to prevail in a redhibition action they must establish:
(1) That the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed he would not have made the purchase had he known of the defects;
(2) That the defects existed at the time of the purchase, but were neither known or apparent to him; and
(3) The seller would not or could not correct the defect when given an opportunity to do so.
La.Civil Code Article 2520.
In every redhibition action, if the evidence establishes only a partial failure of consideration, the court has the power and duty to decree a recovery in quanti minoris, i.e., a reduction of the purchase price. La.Civil Code Article 2543; Ingersoll v. Star-Chrysler, Inc., 234 So.2d 85, 87 (La.App. 4th Cir.1970).
We hold that the trial court did not abuse his discretion in finding that the nature of the problems did not amount to a redhibitory *782 defect. It is equally as clear in this case that the trial court did not abuse its discretion in finding that none of the complaints alleged, either separately or collectively, constituted a redhibitory defect giving rise to a rescission of the sale.
The final issue to be resolved is the refusal of the trial court to allow plaintiffs attorney fees. We hold Clearview responsible for a reduction in the purchase price, however, not liable to the plaintiffs for attorney fees.
The evidence in the record does not support a finding that Clearview had actual knowledge of any defect at the time of the sale. A seller who did not have knowledge of a defect when the sale took place is considered to have been in good faith and, hence, is only liable for the return of the purchase price and expenses of the sale, and preservation of the thing or a reduction in the purchase price. LSA.C.C. art. 2531. Attorney fees in an action in redhibition are awarded only when the seller knew of the defect and omitted to declare it. LSA.C.C. art. 2545.
Therefore, we find that the trial court did not commit error in refusing to grant attorney fees.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.