525 So.2d 316 (1988)
CALANDRO'S SUPERMARKET, INC.
v.
HUSSMAN REFRIGERATION, INC.
No. CA 87 0259.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*317 Andre C. Broussard, Baton Rouge, for plaintiff-appellee Calandro's Supermarket, Inc.
Charles A. Schutte, Jr., Baton Rouge, for defendant-appellant Hussman Refrigeration, Inc.
*318 Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This suit arose from the sale by Hussman Refrigeration, Inc., defendant, of two commercial refrigeration units to Calandro's Supermarket, Inc., plaintiff, in November, 1978. Subsequent to completion of installation in October, 1979, plaintiff experienced a variety of difficulties with the units and filed suit against defendant in July, 1982, based on redhibitory vices and defects contained in the units. Plaintiff sought to recover return of the purchase price, damages and attorney's fees. The trial court rendered judgment in favor of plaintiff and awarded a reduction in the purchase price of $20,000.00, damages in the amount of $20,000.00, and $15,000.00 for attorney's fees. Defendant perfected this appeal.

FACTS
In 1978, plaintiff, Calandro's Supermarket, Inc. (Calandro's) decided to expand its business, which plans included replacing the existing refrigeration units and food cases. Defendant, Hussman Refrigeration, Inc. (Hussman), through representatives of its local and district distributors, contacted and solicited the business of Calandro's owner, Breazeale Calandro. In particular, negotiations took place concerning Hussman "Twin System" refrigeration units. Each of these units consists of two separate, parallel compressors. The system's design advantage is that if one compressor fails, it can be replaced quickly and safely while the unit continues to run on the remaining compressor. Sonny Calandro, manager of the supermarket, was very attracted to Hussman's promise of continual operation, reliability and efficient electrical consumption. On October 9, 1978, Calandro's purchased one Hussman Twin System 15 horsepower unit and one Hussman Twin System 10 horsepower unit for $26,452.00. Calandro's also purchased a 7.5 horsepower unit which is not the subject of this suit. Neither Breazeale nor Sonny Calandro were aware that Hussman's warranty excluded the loss of food due to system failure.
Calandro's engaged the services of John Dufour, a licensed refrigeration mechanic, to install the new equipment. As he was not familiar with the twin systems, both Calandro's and Mr. Dufour were assured by Hussman that Dufour would receive technical assistance and guidance in the installation process.
Installation was finally completed and all units were on line in October, 1979. Thereafter, the systems began experiencing numerous compressor failures. Often, the units became completely inoperable, causing meat spoilage resulting in hundreds of pounds of meat being thrown away. Numerous attempts were made by John Dufour, assisted by Hussman field engineers, to remedy the cause of the compressor failures. Calandro's was still losing compressors when Dufour terminated his business relationship with Calandro's in early 1981.
In May, 1981, Calandro's engaged the services of Paul Claflin, another refrigeration serviceman. After several more compressor failures, on November 4, 1981, it was discovered that the "weep holes" in the oil return line stub in the suction manifold were reversed. The reversal situation was rectified by simply switching the starting sequence of the compressor motors. Thereafter, no more compressor failures occurred except one caused by a power surge during an electrical storm.
On appeal, defendant presents the following assignments of error:
1. The trial court erred in finding that Hussman had undertaken the obligation to supervise and had guaranteed the proper installation of the refrigeration systems at Calandro's.
2. The trial court erred in finding that Hussman was responsible for the problems resulting from substandard installation of the refrigeration systems.
3. The trial court erred in failing to distinguish the compressor failures which occurred due to improper installation and those which occurred as a result *319 of the alleged manufacturing defect, if any.
4. The trial court erred in awarding Calandro's a reduction of the purchase price, damages as in a tort action, and attorney's fees.
5. The trial court erred in determining the amount of damages to be awarded Calandro's since there was not adequate proof in the record to support any of the damages awarded.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Hussman contends that the trial court erred in finding that Hussman was responsible for the proper installation of the refrigeration systems. Hussman argues that this fact converts the transaction from a sale to a building contract. Accordingly, the trial court could not award a reduction in purchase price, damages and attorney's fees, which are tort and redhibition remedies.
While the intent of the parties to a contract to enforce different obligations may be given effect, the contract as a whole may be characterized by its predominant or fundamental obligation. Austin's of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2d Cir.1985). Thus, the mere fact that an obligor may be involved in the installation of the equipment sold will not change the characterization of the obligation from that of a sales contract and therefore the rules governing a sale will control. Tidewater, Inc. v. Baldwin-Lima Hamilton Corp., 410 So.2d 355 (La.App. 4th Cir.1982).
The installation and service of the refrigeration equipment Hussman sold required special knowledge of the twin systems concept. Both parties to this suit contemplated the supervision of, involvement in, and approval by Hussman of the installation work to be performed by John Dufour, Calandro's refrigeration mechanic. We conclude that this contract had as its predominant or fundamental object the obligation to deliver or to provide the supermarket an operational refrigeration system and that the contract was correctly categorized as one of sale subject to redhibition. See Rasmussen v. Cashio Concrete Corp., 484 So.2d 777 (La.App. 1st Cir.1986); Austin's of Monroe, Inc. v. Brown, supra. Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 3
Hussman argues that the trial court erred in failing to distinguish those compressor failures caused by improper installation from those caused by the alleged manufacturing defect. Essentially, Hussman claims that the plaintiff is not entitled to relief in redhibition for compressor failures which occurred as a result of improper installation.
At trial, a Hussman field service engineer of twenty-nine years testified that, during the manufacturing process, a welder had reversed the weep hole component in the refrigeration systems. He also stated that other instances of reversal had been reported to Hussman. In its oral reasons for judgment, the trial court found that the weep hole reversal situation was a technical defect which constituted a redhibitory vice. The trial court further found that the damages suffered by Calandro's were caused by this redhibitory vice, in conjunction with Hussman's nonfulfillment of its obligation to provide properly functioning refrigeration equipment.
The findings of the trial court are correct. There is no need to distinguish whether or not the compressor failures were caused by improper installation or the manufacturing defect. It is settled that inadequate performance of installation services may constitute a redhibitory defect. See Rasmussen v. Cashio Concrete Corp., supra. Thus, even if all of Calandro's injuries were caused by defective installation, the trial court could still grant the plaintiff relief on its redhibition demand. Hussman's argument lacks merit

ASSIGNMENTS OF ERROR NOS. 4 AND 5
By these assignments, Hussman contends that the trial court erred in awarding *320 Calandro's a reduction in the purchase price, damages and attorney's fees. Hussman further contends that there is insufficient proof in the record to support the amount of damages awarded.
To prevail in a redhibition action, the plaintiff must prove that the thing sold is "either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civ.Code art. 2520. He must also show that the defect existed before the sale. La.Civ.Code art. 2530. In a redhibitory action, should the court, based upon the evidence, find only a partial failure of consideration, a reduction in the purchase price may be granted to the buyer. Newman v. Dixie Sales and Service, 387 So.2d 1333 (La.App. 1st Cir.1980).
The reduction in price which the trial court may decree is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. One of the principal elements in formulating the reduction of the sale price is the cost of repairs. However, a greater reduction is warranted when the defects are numerous and the repairs lengthy and frequent. This is so because a forewarned buyer would not reasonably pay the full price, reduced only by the cost of repairs, if he knew the extensive repairs of the defects would significantly curtail his use and cause him considerable inconvenience and aggravation. Griffin v. Coleman Oldsmobile, Inc., 424 So.2d 1116 (La.App. 1st Cir. 1982).
Our independent review of the evidence in the record convinces this court that a defect existed in the twin compressor systems at the time of the sale. This "weep hole" reversal situation was caused by a welder during the manufacturing process. Moreover, evidence adduced at trial indicates that there were approximately sixteen compressor failures over a two year period of time with an obvious abundance of inconvenience resulting therefrom.
The ultimate question of the existence of a redhibitory vice and the amount to be awarded in quanti minoris are questions of fact for the trial court which should not be disturbed in the absence of manifest error or abuse of the wide discretion afforded the court. Newman v. Dixie Sales and Service, supra.
Hussman has failed to demonstrate that the trial court abused its discretion in awarding a reduction in purchase price of $20,000.00. In the absence of such a showing, the trial court's award should be upheld.
Having concluded that the refrigeration equipment sold by Hussman to Calandro's is redhibitorily defective, our next inquiry is whether or not Calandro's is entitled to recovery of damages and attorney's fees. La.Civ.Code art. 2545 states that a seller who knows of the vice of the things he sells and omits to declare it is answerable to the buyer for damages and reasonable attorney's fees. The Courts have construed this article to mean that a manufacturer is presumed to have had knowledge of the vice in the product sold. Rasmussen v. Cashio Concrete Corp., supra. Since Hussman is the seller and manufacturer of the refrigeration equipment, Calandro's is entitled to the recovery of damages and attorney's fees.
The trial court awarded Calandro's $20,000.00 in damages. This amount is not excessive. On approximately sixteen different occasions over a twenty-three month period, the equipment suffered compressor failures and required repair. During several of these incidents, meat contained in the refrigerated display cases would spoil and have to be thrown away. The manager of Calandro's testified that approximately 39,000 pounds of meat were lost Calandro's introduced evidence at trial reflecting that lost meat sales from 1979, 1980 and 1981 totalled roughly $129,000.00.
The trial court stated in oral reasons that it was not satisfied that all of the damages due to lost food were sufficiently proved by a preponderance of the evidence. Under the facts of this case, we find that the trial *321 court's award of $20,000.0 in damages is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The court below also awarded Calandro's the sum of $15,000.00 as attorney's fees. This award was not unreasonable, nor was it an abuse of the court's discretion. See Rasmussen v. Cashio Concrete Corp., supra.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.