542 So.2d 673 (1989)
Brenda REID
v.
LESON CHEVROLET CO., INC., et al.
No. 88-CA-823.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
*674 Greenberg & Dallam, Roger I. Dallam, Gretna, for Leson Chevrolet Co., Inc., defendant-appellant.
Bernard, Cassisa, Saporito & Elliott, A Professional Law Corp., Joseph S. Palermo, Jr., Judith A. Zakens and Elizabeth A. Zatina, Office of General Counsel, General Motors Corp., of counsel, Metairie, for General Motors Corp., defendant-third party defendant-appellant.
Louis A. Heyd, Jr., Dennis Krystek, New Orleans, for Brenda Reid, plaintiff-appellee.
Before CHEHARDY, DUFRESNE and WICKER, JJ.
CHEHARDY, Judge.
Defendants, Leson Chevrolet (Leson) and General Motors Corporation (GM), appeal from a jury verdict rescinding the sale of a 1984 Chevrolet Corvette. The vehicle was sold to plaintiff, Brenda Reid, by Leson and it was manufactured by GM.
On appeal defendants assert the jury was manifestly erroneous in concluding there were redhibitory defects in plaintiff's vehicle warranting a rescission of the sale. In addition defendants contend the jury erred in finding Leson liable because plaintiff failed to allow Leson a reasonable opportunity to repair the vehicle.
Plaintiff, a special education teacher, ordered a custom Corvette from Leson in May 1983 for a total price of $26,873.48. On June 28, 1983, the vehicle was delivered to plaintiff. Shortly after driving the vehicle from Leson, plaintiff and her husband, Collins Reid, discovered the cruise control did not work; the sun visor would not stay up; and the radio had static which ebbed and flowed with the engine's acceleration and deceleration. Later, problems arose with an air-conditioning louver vent and a small leak developed in the roof (although the leak was never reported to the dealer).
In addition to the uncontested problems (the cruise control, sun visor, radio and air-conditioning louver vent) the plaintiff reported an incident in which the steering wheel locked while she, her husband and two small children were driving on an interstate highway in Atlanta, Georgia. Plaintiff further complained that prior to the incident the anti-theft device sounded for no reason and that after the incident the electric window on the passenger side got stuck in the down position resulting in the theft of the family luggage later the same day.
From the time the Corvette was delivered on June 28, 1983 until plaintiff returned *675 it for the last time after the Atlanta trip (July 22 or 23, 1983), the plaintiff claims it was taken into Leson for repairs several times. Only one repair order was produced at trial. After the Atlanta trip, the vehicle was tested by the Leson mechanics for a steering defect and the original problems were repaired. No problem was discovered in the steering mechanism, the anti-theft device or the power windows. When told of this, plaintiff refused to accept the car.
Plaintiff subsequently filed suit against defendants for redhibition and personal injuries allegedly caused by the steering wheel incident in Atlanta. Leson then filed a third-party action against GM for contribution or indemnity.
A jury trial in the matter was held on December 1 and 2, 1987. Following the trial, the jury rendered a verdict in plaintiff's favor on the redhibition claim and a verdict in favor of Leson on the third-party claim.
On appeal defendants first argue that none of the problems with the vehicle constitute redhibitory defects, either individually or cumulatively. They further point out all of the original complaints were repaired either prior to the plaintiff's trip to Atlanta (the sun visor and the air-conditioning louver vent) or shortly after plaintiff returned the vehicle following that trip (the cruise control and radio). Further, defendants assert they could find no problem with the steering, the electric windows or the anti-theft device after testing the vehicle pursuant to plaintiff's complaints following the Atlanta trip. They consequently conclude plaintiff has failed to prove she is entitled to a rescission of the sale under the law of redhibition.
Redhibition is the avoidance of a sale because of a nonapparent vice or defect which renders the thing either absolutely useless or its use so inconvenient and imperfect that the buyer would not have purchased it had he known of the vice. LSA-C.C. arts. 2520, 2521. The defect must have existed at the time of the purchase. Rosenthal v. Clearview Dodge Sales, Inc., 464 So.2d 777 (La.App. 5 Cir. 1985). Proof of this fact can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. Id.
Before the purchaser can recover the purchase price from the seller, the buyer must first tender the thing to the seller giving the seller a reasonable opportunity to repair, remedy or correct the vice. LSA-C.C. art. 2531; Vance v. Emerson, 420 So.2d 1032 (La.App. 5 Cir.1982); Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3 Cir.1984); writ denied 449 So.2d 1349 (La.1984). If the seller fails to remedy the defect or is unable to do so, then he must return the purchase price with all reasonable expenses occasioned by the sale. LSA-C.C. art. 2531. The question of what constitutes a reasonable opportunity to repair a defective product is a question for the finder of fact. Dickerson v. Begnaud Motors, Inc., supra. This requirement, however, does not apply to a bad faith seller, the seller who knew of the defect, or to the manufacturer who is presumed to know of the defects in the thing. Dickerson v. Begnaud Motors, Inc., supra. The good faith seller, in addition, has a corresponding or similar right against the manufacturer for any losses sustained as a result of the redhibitory action. LSA-C.C. art. 2531.
Minor defects alone do not constitute defects subject to the redhibitory action. LaFrance, v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291 (La.App. 5 Cir.1985). However, even though vices may be minor or may have been repaired, multiple defects can collectively form the basis of the redhibitory action. Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5 Cir.1985). The existence of a redhibitory defect, like the question of reasonable opportunity to repair, is a question of fact to be determined by the trial judge or jury and should not be disturbed absent manifest error. Vance v. Emerson, supra; Dickerson v. Begnaud Motors, Inc., supra.
Plaintiff and Mr. Reid testified they took the vehicle to Leson on several occasions, including the day after they received *676 the car. Mr. Reid stated he remained at Leson the entire day on the latter occasion, but that the service people were unable to fix the problems with the cruise control, sun visor and radio. The Reids asserted the other trips were likewise unsuccessful until July 14, 1983 when the air-conditioning louver vent and the sun visor were repaired, although they were only able to produce the repair order dated July 14, 1983 to support their allegations. Mr. and Mrs. Reid further testified that during one of those trips to the service department a mechanic informed them the Leson people were having difficulty working on the car because it was a new model. Mr. Reid was under the impression the service people were unfamiliar with the computer on this particular Corvette.
During the several days the vehicle was at Leson after being taken there on July 14, 1983, the Reids decided to go to Atlanta on a combined business-pleasure trip. The trip was related to the couple's bakery business. At this time neither the cruise control nor the radio was fixed since Leson was waiting for parts. They also took their two small children who rode in the back on a platform since the car does not contain rear seats. Plaintiff and Mr. Reid testified that while traveling on the interstate in Atlanta the anti-theft device suddenly sounded three times, after which the steering wheel locked into a fixed position. Mr. Reid was driving at the time and he stated the engine continued to run despite the locked wheel. Mr. and Mrs. Reid further testified they believed a collision was imminent since Mr. Reid could not turn the vehicle. They stated it was only due to a fortuitous curve in the road that allowed Mr. Reid to reach the side of the highway safely. In the meantime Mrs. Reid turned toward the back to hold the two children in anticipation of a collision. The family was shaken after the incident and when Mr. Reid attempted to restart the vehicle, the steering wheel unlocked. However, one of the windows went down and would not go back up.
Following this incident the family went to a local mall where they conducted some business and the local Chevrolet dealer was called. Apparently no help was forthcoming from the local dealer so the Reids returned to the car. During their stay in the mall their luggage was stolen. The Reids then decided to return home.
The plaintiff returned the vehicle to Leson on either July 22 or July 23, 1983. She stated she intended to leave it there permanently because she was upset and felt the car was dangerously defective. In August she was informed all of the original problems had finally been fixed and that no one could find anything wrong with the car's steering mechanism, or anti-theft device or electric windows. Despite Leson's assurances Mrs. Reid refused to accept the Corvette, believing it to be dangerous.
Defendants produced expert witnesses at trial. Gerald Confer, an engineer with GM, testified the incident could not have occurred as described by the Reids. He further stated he inspected the car in 1986 and found nothing wrong with the steering mechanism. Mr. Confer said if the mechanism was defective the problem should have repeated itself.
On cross-examination, Mr. Confer stated the inspection lasted 20 minutes and he did not test drive the car. He did, however, state the anti-theft device should have had no effect on the steering as it only causes the lights to flash and the horn to sound. As to the window, he believed Mrs. Reid accidentally hit the electric button.
Ray Bergeron, the service manager for Leson, testified as an expert in automotive mechanics. He claimed he visually examined the Corvette on the rack and under the hood and saw nothing indicative of a steering wheel defect. He also stated he drove the car one time after it was returned. Mr. Bergeron, on cross-examination, admitted the test drive lasted five miles. He further pointed out that repair orders are not normally written if the complaint is minor.
After listening to the testimony and viewing the documentary evidence, the jury found plaintiff proved a defect sufficient to warrant a rescission of the sale. Whether the jury decided the rescission was warranted based on one defect (the steering *677 problem) or multiple problems we cannot determine. But, at any rate, the jury apparently chose to believe plaintiff and her husband that the complaints, including a dangerous steering defect, existed and that the nature of the defects warranted a rescission of the sale. After our review we cannot say the jury was manifestly erroneous in its finding.
Next, defendants contend that the jury erred in finding Leson liable because it was not given a reasonable opportunity to repair the vehicle. In particular they assert the minor problems were repaired in August 1983 and no problems could be found with plaintiff's complaints as to the steering, the anti-theft device or the windows. Since Mrs. Reid intended to leave the car when she deposited it on July 23, 1983, defendants contend it has proven Mrs. Reid failed to allow a reasonable opportunity to repair as required by law.
The evidence shows the Reids returned the Corvette several times to Leson for repairs and that the major repairs were not made until August 1983. The evidence also shows Mrs. Reid was distrustful and terrified of a repeated occurrence of the steering wheel problem when she returned the car on July 23, 1983. Since the vehicle was returned for that problem, as well as the others, and Leson was unable to find the problems which arose on the Atlanta trip, we find that Leson was given a reasonable opportunity to repair the vehicle. See LSA-C.C. art. 2531. Furthermore, the fact that some repairs were made does not negate plaintiff's right to rescission of the sale. Wheeler v. Clearview Dodge Sales, supra. Consequently we find the jury did not manifestly err in failing to relieve Leson of liability on this asserted basis.
Accordingly, the judgment of the trial court is hereby affirmed.
Appellants are to pay the costs of this appeal equally.
AFFIRMED.