556 So.2d 1364 (1990)
George R. BLUE, Jr.
v.
Gerard L. SCHOEN, Jr., Patrick M. Schoen, Aline C. Schoen and Schoen Energy Management Corp.
No. 89-CA-611.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 1990.
Writ Granted April 27, 1990.
*1365 Baldwin & Haspel, Jack G. Ricci, Daryl G. Glorioso, New Orleans, for defendants-appellants.
Blue, Williams & Buckley, John V. Baus, Jr., George R. Blue, Jr., Metairie, for plaintiff-appellee.
Before CHEHARDY, C.J., and BOWES and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
Defendants, Gerard Schoen, Jr., Patrick M. Schoen, Aline C. Schoen and Schoen Energy Management Corporation (referred to collectively as the Schoens), appeal from a judgment in a redhibition and/or breach of contract case. Plaintiff in the matter is George R. Blue, Jr., a local attorney who purchased a home "weatherization" system sold and installed by defendants.
On appeal, defendants assert the transaction was not a sale within the meaning of the law of redhibition. Alternatively they argue that, if redhibition applies, the claim was prescribed; or if the claim was not prescribed, a reduction of the purchase price was the proper remedy as opposed to rescission of the sale. Further, defendants *1366 object to the award of damages and attorney fees. For his part, plaintiff asks this court to increase the amount of attorney fees awarded by the trial judge and to award a separate amount for the work performed pursuant to the appeal.
George Blue was approached early in 1985 by a salesman employed by defendants to purchase and install a system in plaintiff's home which would "weatherize" it, thereby saving him money on his energy bills. After several discussions, the parties arrived at an agreement and the contract was executed on March 12, 1985. Plaintiff thereafter paid defendants $6,000 for the system.
In conjunction with the contract, which contemplated some unknown percentage of energy savings over the life of the system, plaintiff was provided a five-year parts and labor warranty. In addition, he was given a written guarantee that he would experience at least a 30% savings on his combined gas and electric bills for the two years following installation of the system. Failing that, the defendants agreed to reimburse him for the difference. (The 30% savings figure was based on 40% of 75% of the total utility bill since the guarantee only applied to savings related to air conditioning, heating and hot water. According to the agreement, those items comprise three-fourths of the total energy bill of a household.) For his part, plaintiff was required to calculate his savings on a yearly basis by comparing his utility bills after each of the two years to the one in the year preceding the installation of the system.
On March 14, 1985, defendants' work crew arrived at plaintiff's home to install the system. At that time, the crew conducted an air filtration test to discover all possible sources of air leakage. To do this they used an "energy door", a large fan which forced air out of the house to form a vacuum making air leakages detectable. They then sealed the air leaks by use of caulking, installed a setback thermostat (which was supposed to maximize the hot or cool air in the vent pipes) and installed a domestic solar hot water system. The solar hot water system included installation of a solar panel on the roof and a storage tank in the attic connecting to a water heater.
The following year, in January, defendants responded to a call from plaintiff regarding a leak from the solar panel. A repair crew arrived and fixed the leak. At that time they also removed the setback thermostat, promising to "check it out" and return it.
In March, plaintiff performed his calculations according to the guarantee and discovered no savings in his combined utility bills. (To the contrary, his electrical bill increased, although his gas bill showed a decrease.) Consequently, plaintiff wrote a letter demanding his reimbursement pursuant to the guarantee, as well as requesting reimbursement for the cost of the thermostat, which was never returned or replaced. The amount requested representing his loss of savings was $437.98.
Following plaintiff's letter, a series of discussions ensued, but no reimbursement was forthcoming. Gerard Schoen inspected the house in June 1986 and, although he found the component parts of the system operating properly, he promised to resolve the problem. However, no physical action was taken and discussions about the problem continued.
In March 1987, plaintiff performed the calculations to determine the promised second-year savings but found, as in 1986, no combined savings, and an increase in his electrical bill. As a result, he wrote another letter to defendants requesting payment of the reimbursement for both years, which totaled $946.93. He was again put off by promises to remedy the situation. When the promised remedy failed to occur, plaintiff filed suit in August 1987 for redhibition and/or breach of contract.
Defendants responded to the suit with a general denial and exception of prescription. The exceptions were denied and the case went to trial on March 22, 1989. Following the trial, judgment was rendered in plaintiff's favor in the amount of $10,752.59 on the main demand and $5,600 for attorney fees.
*1367 Defendants first contend the law of redhibition does not apply to the transaction in this case. They argue the "weatherization" system was a service on a "building" and not the sale of a "thing," as contemplated by LSA-C.C. art. 2520. They assert the jurisprudence distinguishes a sale for redhibition purposes by assessing the degree and magnitude of the services the obligor must perform. If the court finds the services a significant aspect of the contract, then, defendants contend, the transaction is not a sale. As examples, defendants cite Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292 (La.App. 1 Cir.1977), in which a contract to sell carpet and flooring was found to be a sale, and Kegler's, Inc. v. Levy, 239 So.2d 450 (La. App. 4 Cir.1970), where a contract to furnish and install carpet was determined not to be a sale. Other cases cited by defendant are: Martin v. AAA Brick Co., Inc., 386 So.2d 987 (La.App. 3 Cir. 1980) a contract to build a fireplace not considered to be a sale; Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961)a contract to install defendant's air-conditioner not a sale; Martin v. Earl J. Rome, Jr., D.D.S., 486 So.2d 213 (La.App. 1 Cir.1986) the fitting of a dental patient with bridgework sold by a dentist construed to be a service contract, not a sale.
In further support of their contention that this transaction was a service or construction contract defendants cite Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517 (5 Cir.1981). There the contractor built two cross-flow induced draft cooling towers after supplying design services, materials and supervision of the construction. Under these circumstances, the court concluded the contract was not one of sale subject to redhibition. Defendants assert the similar facts here require an identical finding.
Plaintiff, on the other hand, asserts the issue requires a determination of which element of the transactionthe giving or sale versus the doing or buildingis more fundamental to the intent of the parties and the transaction itself. And, in support of this argument, he cites the analysis performed by this court in Alonzo v. Chifici, 526 So.2d 237 (La.App. 5 Cir.1988). There we adopted a three-prong test to determine the nature of the contracts for redhibition purposes.
In a contract to build, we stated, the purchaser has some control over the object's specifications, the negotiations occur prior to construction and the contract contemplates the builder will furnish the materials, skill and labor. We further applied the "value test," which is whether the labor, as opposed to the incorporated materials, constitutes the "principal value of the contract." When the former supercedes the latter, the contract is one to build, whereas where the incorporation of the materials is the principle value of the contract then it is a sale. Using the Alonzo analysis, plaintiff asserts the facts herein show the transaction constitutes a sale since the principle value was the incorporated materials or the "system" designed to weatherize his house.
In further support of his assertions plaintiff cites Rasmussen v. Cashio Concrete Corp., 484 So.2d 777 (La.App. 1 Cir.1986); Photocopy, Inc. v. Software, Inc., 510 So.2d 1337 (La.App. 3 Cir.1987); FMC Corp. v. Continental Grain Co., 355 So.2d 953 (La.App. 4 Cir.1977) and Chastant v. SBS-Harolyn Park Venture, 510 So.2d 1341 (La.App. 3 Cir.1987).
The Rasmussen case involved a seller who assembled component parts manufactured by others into a sewer system and sold it to the purchaser. That was deemed a sale, as was the sale and installation of a customized computer software program in Photocopy, Inc. Likewise, in FMC Corp., a sale was found where the seller contracted with the owner of a coal loading machine to convert it for use in unloading grain. All three cases, plaintiff asserts, are similar to this one in that the various defendants assembled component parts manufactured by others into a system or product and sold it for a fixed price. In addition, defendants here, as in Photocopy and Chastant, which involved the building of townhouses, labeled the product and presented it for sale as their own causing it to become a manufacturer for all legal purposes.
*1368 Redhibition, as defined by LSA-C.C. art. 2520, is the "avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." A contract of sale is an agreement where one gives a thing in exchange for a price and the other gives a price in order to obtain the thing. LSA-C.C. art. 2439. "Thing" is nowhere defined in the Louisiana Civil Code. Consequently, the nature of a transaction must be determined according to jurisprudential guidelines and the facts of a particular case.
In this case, the system, sold under the defendants' label, was produced by defendants' assembly of the various components necessary to the objective, which was to make plaintiff's home more comfortable and to save him energy costs. While the transaction involved installation, a contract may give rise to differing obligations yet its nature as a whole is determined by its fundamental or predominent obligation. Calandro's Supermarket v. Hussman Refrig., 525 So.2d 316 (La.App. 1 Cir.1988); Austin's of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2 Cir.1985). The mere fact installation is involved will not change the characteristic of a contract from a sale to a building contract. Calandro's Supermarket, supra.
Here, the object predominating the contract was to deliver or "give" a system as similarly found in Austin's of Monroe Inc., which, like Photocopy, Inc., concerns a restaurant computer system. Further, these facts satisfy the tests described in Alonzo. Thus, we find the transaction was one of sale and the trial judge did not err in applying the principles of redhibition.
Defendants next assert that if redhibition applies, the action was prescribed by plaintiff's untimely filing of the suit. He points out suit was filed 16 months after plaintiff had knowledge the system was not producing the guaranteed savings. They contend that even if they are found to be in bad faith, the action was prescribed since there were no attempts to repair and the suit was filed over a year from the date the system's failure was discovered.
Plaintiff asserts the claim was not prescribed. He points out he did not become aware the system was not working as it should until April 1986 when he performed the first year's calculationsthus, his claim for reimbursement under the guarantee. However, he states the defendants had made repair visits to his home pursuant to his complaints in January and March of 1986. As a result he assumed the problem was corrected. Not until April 1987 when he analyzed the bills for the second year, again failing to experience any savings whatsoever, did it become apparent that the system was seriously defective.
An action in redhibition against a good faith seller prescribes one year from date of the sale. LSA-C.C. art. 2534. An action against a seller in bad faith prescribes one year from the date the vice is discovered. LSA-C.C. art. 2546. However, when the seller has undertaken steps to repair the defect, prescription does not begin to run until the seller has abandoned attempts to repair. Seeman v. Clearview Dodge Sales, Inc., 467 So.2d 1332 (La.App. 5 Cir.1985); Vallette v. Toussaint, 467 So.2d 107 (La.App. 3 Cir.1985); Robertson v. Chrysler Corp., 424 So.2d 1184 (La.App. 1 Cir.1982); First Mtg. Investors v. CMF & Assoc., Inc., 393 So.2d 937 (La.App. 3 Cir. 1981).
Interruption of prescription continues as long as the seller communicates to the buyer orally or in writing that the defect can be remedied. Seeman, supra; Vallette, supra; Robertson, supra. The latter does not apply, however to communications subsequent to a disclaimer of liability and where the plaintiff cannot be said to have been lulled into a false sense of security. See: First Mtg. Investors, supra.
In this case physical attempts were made to repair the system on January 24, 1986 and March 17, 1986. In either June 1986 or September 1987 (the testimony is contradictory), Gerard Schoen inspected the premises as a follow-up to plaintiff's letters and phone calls. During the time prior to his filing suit in August 1987, plaintiff testified, defendants assured him the problem could and would be resolved. Another letter *1369 was sent to Schoen in December 1986 pursuant to these promises.
Schoen stated he informed plaintiff in June 1986 the problem was not with the system, but the fact the attic was overinsulated and the windows needed a seal made of a metallic reflective coating. Schoen stated he suggested plaintiff also install radiant barriers in the rafters and another type of thermostat. Schoen stated the company never intended to "repair" the system because it was operating fine. He insisted the problem was caused by conditions in plaintiff's house and that plaintiff rejected the suggestions he made to correct the situation. He admitted the conditions in plaintiff's house existed at the time of the sale.
The testimony is contradictory regarding the verbal promises to repair made after March 1986. However, the trial judge (who did not provide reasons for judgment) apparently believed plaintiff's version of the matter and concluded prescription was interrupted by defendants promise to repair.
Where there is conflict in the testimony, the appellate court must give great weight to the factual conclusions of the trier of fact and those finds may not be disturbed absent a finding that the trial court abused its discretion. Canter v. Koehring Company, 283 So.2d 716 (La.1973) our review of the testimony does not disclose an abuse of the trial judge's discretion. We, therefore, find the trial judge did not err in dismissing defendants' peremptory exception of prescription.
Defendants assert that if the claim is not prescribed, plaintiff is not entitled to the relief obtained, because he failed to prove a vice or defect sufficient to warrant rescission of the sale. They contend the system provided at least a partial savings and thus a reduction in the purchase price was the proper remedy.
Plaintiff contends he is entitled to recission, as found by the trial judge, because he failed to receive any benefit as a whole from the system. He points out his sole reason for purchasing the system was to save money on his combined utility bills. While he admits his gas costs showed a decrease, his electricity bills increased, offsetting any benefit he may have received otherwise from the lower gas bills.
Before a purchaser can recover the purchase price in a redhibition action the seller must be given the opportunity to repair, remedy or correct the vice. LSA-C.C. art. 2531; Reid v. Leson Chevrolet Co., Inc., 542 So.2d 673 (La.App. 5 Cir. 1989). This requirement only applies to a good faith seller. The seller in bad faith, one who knew of the defect or the manufacturer whose knowledge is presumed, need not be given the opportunity to repair. Reid, supra.
If the seller fails to remedy the defect or is unable to do so, then he must return the purchase price with all reasonable expenses occasioned by the sale. LSA-C.C. art. 2531. A reduction of the price, on the other hand, may be warranted instead when the defect merely diminishes the value of the thing sold rather than making it useless for its intended purpose. LSA-C.C. arts. 2541; Florane v. Griffis, 476 So.2d 4 (La.App. 5 Cir.1985). The trial court has discretion as to whether a reduction in price or rescission of the sale is warranted in a redhibitory action. LSA-C.C. art. 2543; Florane, supra.
The uncontroverted evidence here shows that plaintiff failed to obtain any combined gas and electrical savings from the system. Nor can plaintiff expect to obtain those savings without extensive modifications and additions to his home. The evidence also shows defendants knew or should have known the system was not workable at the time of the sale since Gerard Schoen testified certain conditions then-existing in plaintiff's home would interfere with the system's operations. He insisted plaintiff's house was over-insulated which caused a reverse effect, thus requiring more, rather than less, electricity use. He wanted plaintiff to remove some of the insulation, install radiant barriers in the rafters of the attic, seal plaintiff's windows with a silver coating (or with other methods which would prevent the windows from opening) and to install yet another thermostat.
*1370 Schoen stated he knew from his studies that over-insulation would interfere with his weatherization system, but he failed to disclose this information to his sales or installation employees because over-insulation was a rarity in this area. The testimony showed as well that neither he nor his sales representative inspected the attic or asked plaintiff about insulation in the house prior to the sale or installation of the system.
Our review of the evidence indicates the system failed to provide any savings, much less partial savings as contended by defendants (the gas savings were more than off-set by the increased electrical costs), and that the system was totally useless for its intended purpose. It further reveals the defendants, who were given the opportunity to repair the system, were unable to correct the defect.
Even had plaintiff failed to fulfill the obligation that he tender the system for repair, defendants knowledge that the system could not work in plaintiff's home given the conditions existing at the time of the sale places them in the position of bad faith sellers thereby relieving plaintiff of that requirement for an action in redhibition. As a result, we conclude the evidence shows the trial judge did not err in rescinding the sale rather than ordering a reduction of the purchase price.
Defendants next contend the plaintiff is not entitled to rescission of the sale because he failed to tender, or offer to return, the defective system to defendants prior to filing suit. Defendants assert the jurisprudence requires such an offer before plaintiff can recover the purchase price under the law of redhibition.
As a general rule, a tender or offer to return a defective object sold and a restoration of the status quo is a prerequisite to rescission of a sale for redhibitory defects. Vance v. Emerson, 420 So.2d 1032 (La.App. 5 Cir.1982). The rule does not apply, however, when it can be shown that the offer would have been a vain and useless act. Lokey v. Dixie Buick, Inc., 400 So.2d 322 (La.App. 4 Cir.1981). In addition, a tender is not required to a bad faith seller or manufacturer. LSA-C.C. arts. 2545; 2531.
In this case the evidence shows any specific offer to return the system would have probably been rejected. At all times during his testimony, Gerard Schoen insisted the system was working "fine" in spite of plaintiff's clear and uncontested proof that he experienced no savings. He blamed the plaintiff's plight on the condition of plaintiff's house, even though the conditions existed at the time of the sale. In addition, plaintiff testified he, at all times, was willing to return the object and that although he never made a formal offer prior to filing suit, he discussed it with Schoen to no avail.
Based on these facts, we find a tender to return the system would have been a vain and useless act. In addition, as we pointed out previously by selling a product which they knew or should have known was defective at the time of the sale, defendants are sellers in bad faith, thereby excusing a formal tender by plaintiff. Therefore, we again conclude the trial judge did not err in ordering a rescission of the sale.
In the defendant's fifth specification of error, it is asserted the trial judge erred in his award of damages and attorney fees. In respect to the damages, they contend the trial judge award included damages for mental distress and inconvenience; items which are not compensable in redhibition or breach of contract cases unless the contract is designed to gratify a nonpecuniary interest, citing LSA-C.C. art. 1998. In addition, they contend the trial judge erred in allowing evidence to be admitted over their objection on mental distress and inconvenience, as well as damages for loss of savings for three additional years based on the five-year parts and labor warranty, because neither claim was pleaded in plaintiff's petition. Defendants also complain that the attorney fees awarded were excessive.
In regard to nonpecuniary damages, as a general rule recovery for those losses have not been allowed in contract or redhibition cases except where the clear intent of the contract was to satisfy some intellectual or *1371 nonpecuniary interest. LSA-C.C. art. 1998; Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976). Although a few subsequent cases attempted to modify the application of this principle, the Louisiana Supreme Court reaffirmed its validity in Lafleur v. John Deere Co., 491 So.2d 624 (La.1986).
In this case the record shows plaintiff testified to the loss of $6,000 for return of the purchase price, $943.93, representing the loss of the savings guaranteed under the contract for two years, $1,635.28 for interest on plaintiff's loss of use of the $6,000 (from the date he paid defendants to the date he filed suit), and $1,420.38 as compensation for an additional three-year loss of savings calculated in the same manner by plaintiff as his losses under the separate two-year guarantee. This latter item of damages was based on the testimony by all the witnesses that the system was expected to produce some unspecified amount of savings over its life and beyond the first two years. The life was assumed to be at least five years (but probably more), since defendants warranted the parts and labor for that period of time. The remainder of the award $755 is specifically unaccounted for in the evidence.
The trial judge did not provide reasons for judgment or indicate in any other fashion how he arrived at the figures he concluded plaintiff was entitled to receive. However, as can be seen by comparing the testimony to the award, the judgment, while not exact, closely tracks the plaintiff's testimony on his specific losses without considering his testimony on mental distress and inconvenience.
We cannot determine whether the award included an amount for nonpecuniary damages. The sums that are specially unaccounted for in the testimony are as easily attributable to loss of savings item of damage as to mental distress and inconvenience. Consequently, we find no need to disturb the award on this basis.
In regard to the other items of damages, LSA-C.C. art. 2531 provides that a seller in good faith is only liable for the purchase price and reasonable expenses occasioned by the sale in those instances where he is unable to repair, remedy or correct the vice. A bad faith seller, however, is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform, including attorney fees. LSA-C.C. art. 2545. Damages that cannot be ascertained with certainty are nonetheless recoverable at the discretion of the trial court. LSA-C.C. art. 1999. See also LSA-C.C. arts. 1996 and 1997.
In this case, we only question the appropriateness of damages related to interest on plaintiff's loss of use of the $6,000 he paid for the system. Yet, again, we have no way to determine whether or not that item was included in the judgment, or whether amounts over and above the other losses were attributable to future loss of savings. Since the latter is insusceptible of precise measurement, it is subject to the trial court's discretion which, in turn, is subject to our review for abuse of that discretion.
After reviewing the evidence on plaintiff's damages, we find the plaintiff proved by a preponderance that he sustained the ascertainable losses he testified to at trial, as well as losses less subject to precise measurement. We further find the amount awarded for those losses was well within the trial judge's discretion. Consequently, we conclude the trial judge did not err in his damage award.
As to whether the trial judge improperly allowed evidence of the loss of savings and/or mental distress and inconvenience claim over defendants' objection, we point out the Code of Civil Procedure allows the court to award any relief to which the party is entitled, regardless of the pleadings. LSA-C.C.P. art. 862. LSA-C.C.P. art. 1154 further provides:
"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a *1372 continuance to enable the objecting party to meet such evidence."
While this article does not allow the party to add an issue, it allows the pleading of facts relevant to an issue pleaded generally. See: LSA-C.C. art. 1154, Notes, Comment C. Based on these articles we find the trial judge did not err in allowing the evidence to be admitted.
Defendants, lastly, complain that the award of attorney fees was excessive. Plaintiff, on the other hand, answered the appeal, asserting the award is inadequate and requesting an increase. He also claims additional attorney fees for work performed pursuant to the appeal.
The trial court award provides for attorney fees in the amount of $5,600. This amount was less than half of the amount requested and testified to at trial by plaintiff and supported by documentation from his office. Plaintiff asserts he is entitled to fees for 140 hours, 17.9 of which are for trial counsel at $90 per hour, 118.5 for plaintiff's own time at $100 per hour, and 10 hours at $100 per hour for the services of another attorney in plaintiff's office. The requested total is approximately $14,520.
The amount of attorney fees a party is entitled to is based on the facts of a particular case. In making that determination, the trial court is vested with great discretion and his finding will not be disturbed absent a clear abuse of that discretion. D'Angelo v. Poche, 434 So.2d 120 (La.App. 5 Cir.1983).
Factors which are pertinent to the determination of attorney fees, or their reasonableness where the amount is disputed, were set forth in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), now codified in Rule 1.5(a) of the Rules of Professional Conduct of the Louisiana State Bar Association, which replaced the Code of Professional Responsibility effective January 1, 1987. Those factors are:
"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent."
Leenerts Farms, Inc. v. Rogers, supra, at page 219.
In this case, plaintiff testified to the hours involved, explaining that defendants raised various issues which required extensive research and the expenditure of time in conferences, discussions, the filing of pleadings, etc. After our review, we agree the case involved more issues than the ordinary suit for redhibition. However we do not find the record supports a finding that the trial judge abused his discretion in the award. On the other hand, plaintiff is entitled to additional fees to compensate counsel for work related to the post-trial proceedings. In this respect, we find $2,000 to be an appropriate figure.
Accordingly, we hereby affirm the trial court judgment, and further award plaintiff, George R. Blue, Jr., the amount of $2,000, representing post-trial attorney fees, against defendants, Gerard L. Schoen, Jr., Patrick M. Schoen, Aline C. Schoen, and Schoen Energy Management Corporation.
Costs of this appeal are to be paid by defendants.
AMENDED, AFFIRMED AND RENDERED AS AMENDED.